And, ladies and gentlemen, the next piece on the calendar is Hauser v. Guam. Is that the correct pronunciation, Hauser? Actually, Your Honor, it's Heiser. Heiser, all right. May it please the Court, Mitchell Thompson for Petitioner Alan Heiser. In this case, the ultimate question for this Court is whether or not the trial court's 1997 findings of fact were clearly erroneous. As noted by this court in Fisher v. Rowe, to be clearly erroneous, a decision must be more than maybe wrong or probably wrong. Adopting a pithy definition offered by the Seventh Circuit, to be clearly erroneous, the decision must be so wrong that it stinks like a five-week-old dead fish. So the question in this case becomes, were the trial court's findings as stinky as five-week-old dead fish? That's what the Seventh Circuit said? And to try to document it. Let me ask you, is there any question that we review this decision of the trial court under a clearly erroneous standard ourselves? We give no deference of any kind to what the Guam Supreme Court says or its view of the practice in Guam or customs in Guam? Nothing at all? No, Your Honor. Your Honor, this Court in the Phoenix Engineering case, which we cited in our briefs, set forth the standard as far as when an appellate court, this Court, looks at trial court findings from the Superior Court of Guam. In the Phoenix Engineering case, this was under the former appellate procedure by which this Court reviewed decisions from Guam. However, we would submit that there's really no distinction. In Phoenix Engineering, this Court noted that it, in effect, disregarded the intermediate appellate court's review of the findings and conducted a de novo review of the factual findings to determine whether or not they were clearly erroneous. And are all the findings here factual? Yes, Your Honor. We would submit that our point is that the trial court's finding, trial court's conclusion, rather, that Mr. Heiser was entitled to back pay, was supported by the evidence in the record. And I think it's important to go back and look at the trial court's... Well, let's assume, for instance, that the Supreme Court of Guam, instead of saying as it did, that he might have been able to show with the proper evidence that he couldn't have gotten a job in a private firm. Suppose that they had said, we disagree with the court ball because the rule we adopt is you have to apply to private firms. Would we still be reviewing the trial court's findings if there was adequate litigation under a clear error standard? Well, Your Honor, the Court's raised a good question because this case arises from this Court's supervisory role over the Guam Supreme Court. For the first 15 years of the Guam Supreme Court's existence, this Court reviews decisions by the Guam Supreme Court on vicerciori rather than formally viceratio. And we would submit that this Court, as it has supervisory authority over the Guam Supreme Court, has the authority to determine whether or not the Guam Supreme Court rulings are consistent with well-established principles of jurisprudence. And we submit in this case the problem is that, in effect, what happened was the Guam Supreme Court substituted its view of the factual findings for that of the trial court. And we submit that that was improper. And we believe that this Court need not show any particular deference to the Guam Supreme Court's view of the evidence. Let me ask you to answer the question I think Judge Reinhart is asking. Suppose the Guam Supreme Court had reached the result it reached but by a different route and simply said, we think that more is required than simply showing up the unlikelihood of getting hired by a private law firm. We think to satisfy the obligation of mitigation, he's actually got to put an application out there. If the Guam Supreme Court had said that, would we be approaching this in the same way that we're approaching the case that you – in the way that you say we should be approaching this decision? Well, Your Honor, we believe that's the fundamental problem with what the Guam Supreme Court has done here, is that instead of, as we understand it, combing the record to determine whether or not there was evidentiary support in the record to support the trial court's factual findings, the Guam Supreme Court instead, and at paragraph 22 of their 1999 opinion, they expressly said, we don't need to be looked at the evidence in the record. All we care about is the one fact that Mr. Heiser did not apply to private firms. We don't care that he applied to public sector firms. We don't care that he actually did perform court-appointed legal work for the trial court in criminal matters. The only fact that we care about is the fact that he did not apply to a private legal – for a legal job in the private sector. Let me put the question in a different way. Wouldn't it be perfectly appropriate for the Guam Supreme Court in a common law capacity to say, we think mitigation requires more than I don't think I would have been hired, with a little proof that maybe that's right. We think that mitigation requires an actual effort to find another job. And in this case, Mr. Heiser did not apply to any private law firms, testified he only wanted to be a government attorney, apparently didn't apply to any federal agency, didn't really hang out his shingle for any serious stab at a practice. Couldn't a common law court say, that's not mitigation. You've got to make a real effort to find another job, and if you don't, we're not going to award you back pay. Your Honor, a court – if the Guam Supreme Court had done that, then that would be – that would present this case in a different context. But we submit that that's not what the Guam Supreme Court did. In this case, they expressly said, we haven't looked at the record. We don't care about anything except for that one fact. And we think that that was entirely – Well, maybe that's a support for the proposition that what the Guam Supreme Court did was what I described, but they didn't describe it that way. I mean, if they were truly substituting themselves for the trial court, presumably they would have looked at the record. You know, what they say is, we don't look at the record. We look at this fact, and this fact by itself is enough to say that result's wrong, which suggests, although they use clearly erroneous language, their analysis is actually much more of a legal type analysis, that if you don't try to find another job by actually putting in an application, you haven't satisfied the mitigation test. Your Honor, we would submit that the difficulty with that position is that it's undisputed Mr. Heiser did apply for legal jobs. And, in fact, he did perform legal work during the period in question. So it's hard – Did he apply for anybody other than the Guam government? He – various agencies with – various entities related within the government of Guam. And he also performed legal work. And that's the – and what's striking about the 1999 Guam Supreme Court opinion is there's no mention of that whatsoever. And so we would submit that they focused on a fact. In other words, they – if – in reviewing the decision, they focused on this one particular fact, which suggests to us that their – what they did, in fact, do was substitute their version of the facts for that of the trial court. They said that this one fact is all we need to know, and, therefore, we don't care about any other evidence in the record. We believe that there was ample evidence in the record to support the trial court's finding. As I mentioned before, Mr. Heiser did perform legal work during this period. He never received a job offer. He never turned down a job offer from a position that he did apply. And there was also other testimony in the record which supported the trial court's finding. Let me – let me apply here. He's been terminated by the Department of Law. And I presume he's applied to other agencies, but other agencies within the government of Guam now. Offhand, it probably seems – I mean, just as it seems unlikely he's going to be hired by a private law firm if he's been terminated by the government of Guam, it seems to me at least as plausible and probably more likely that his prospects with any other government of Guam agency is not going to be very good. In effect, he's been terminated by the government of Guam, and his only applications are to the government of Guam. Now, couldn't a court say that's not a real effort to find yourself another job? Well, let me clarify just a bit on that point. Mr. Heiser applied to different agencies within the overall umbrella of the government of Guam, but there are different divisions and departments. The Department of Law was under the purview of the Attorney General of Guam. Mr. Heiser applied, for example, to the Public Defender's Office, and that is an entirely separate division. It has its own board. It has nothing to do with the Attorney General. He applied for a position with the Superior Court of Guam, which obviously is completely separate from the Department of Law. He applied to the Advocacy Office and also to the Guam Legal Services, which once again has its own separate board and is not formally an entity within the government of Guam. So we would suggest that in some ways the Guam Supreme Court adopted a false dichotomy. The question we think should have been addressed by the Court is whether or not Mr. Heiser's efforts in some represented a failure to mitigate and whether or not the trial court's findings on that point were clearly erroneous. But I would like to mention one other fact that was in the record. Louis Baza from the Guam Civil Service Commission testified that, generally speaking, when government of Guam employees are fired, that constitutes an economic death sentence because those employees typically have a hard time finding work in the private sector. And I think it may be helpful to keep in context the small, insular nature of Guam and the fact that the government of Guam is by far the largest employer on the island, so that if one is fired from the government, it's generally speaking, according to Mr. Baza's testimony, a black ball that's very difficult to erase. And one other thing I'd like to point out about the trial court's decision is that the trial court carefully weighed the alternatives, and we submit it was a thoughtful and thorough discussion of the issues, but the trial court did not award Mr. Heiser the full back pay that arguably he would have been entitled to. The court deducted approximately $60,000 to reflect amounts that Mr. Heiser either earned or amounts that the trial court felt he could have earned during the period in question. What amounts were the ones he could have earned? I know they deducted the automobile work he did. What did they deduct for what he could have earned? Mr. Heiser earned a little over $12,000 from court appointment work during this period, and the court, in effect, doubled that amount. The court said, well, Mr. Heiser, I feel that you could have earned more money during this period, so the court deducted from the award an additional $12,000, which the court felt Mr. Heiser could have earned. As I recall, he testified there were certain types of felonies he didn't accept. Is that why the court made up that amount? Because he could have gotten more felonies? I'm not sure that the trial court expressly explained how it reached the $12,000 figure. All right. Well, that's all right. I've kept you enough on that. Go ahead with your answer. So, again, what we feel is the problem here is that the law supreme court appears to have focused on one fact, given that fact a great deal of weight, and then basically ignored all the other facts which we submit supported the trial court's findings in this matter. And we would submit that, in this case, the Guam supreme court, in effect, substituted its view of the evidence. It's quite clear the Guam supreme court doesn't feel that Mr. Heiser mitigated these damages, but we submit that's not the proper test.  And as I noted earlier, this court is charged with ensuring that the Guam supreme court has sufficient institutional traditions such that, at the end of this 15-year period, its decisions may then be reviewed directly by the United States supreme court. We feel that, in this case, the Guam supreme court has brushed aside well-established principles of appellate practice, and this court should reverse the decisions of the Guam supreme court in this matter and remain with instructions to enter judgment based on the trial court's original findings of fact. Thank you. Thank you. I would reserve any remaining time I may have for a vote. Thank you. Good morning, Your Honors. May it please the Court and the Counsel. My name is Eric Heisel. I'm an assistant attorney general in the Attorney General's Office in Guam. I'm representing the Department of Law in this case. The first thing I'd like to address is the burden of the standard of review, whether it's de novo or what that is. I know that the ñ I took a look at the other two cases that I'm aware of, and this court has accepted cert in the supreme court. I know that we're not supposed to cite cases that aren't in the supreme court. I think that this court took de novo review in both of those. However, there was mention also, and I would argue that there should be, when we're not dealing with a federal statute like the Organic Act, then this court should have a more differential view of the decisions of the supreme court. Aren't we in the same position the supreme court is in terms of reviewing? We have a cold record in front of us, and we're applying a federal law in this case. Well, I think that this court will probably have to go and look at the findings of the superior court and take a look at the evidence that the superior court relied on, the evidence actually in that case, to see if the findings of the superior court are fairly balanced. Well, if you did that, there's some evidence that's not overwhelming by any means, but there's some evidence that his chances of getting a job in the private firm are pretty slim. When you add not only the fact that he was fired by the government, but that he would have to tell and did tell his future employers that he was very hopeful that he would not stay with them because he was trying to get his job back to the government and thought he would win, is it so unreasonable for a district court to conclude or a trial court to conclude that there's not much point in going to private employers who don't like the idea in the first place that you've just been fired, but in the second place that you don't really want to stay with them? Well, Your Honor, I do think that is unreasonable because that would create an unreasonable and extremely high burden for employers to prove that an employee failed to mitigate damages. Why is it so hard for you to prove that if the burden is on the employer? Could you not have produced witnesses that said, sure, we would have hired him, we'd really love to get people who were fired by the government? Well, of course, that's impossible. Nobody's going to, obviously, I mean, it's common sense. But it is your burden, isn't it, to show that there is work that would have been available or that it would, it's your burden even to show that it's unreasonable. He did not behave reasonably. And I wanted to carry that burden. Shouldn't you have shown that it is possible to get private employment? You did put on a witness. Yes, Meredith Sayer. She wasn't overwhelming either. I mean, who were the witnesses in particular? I think there were two witnesses that were called, one by Mr. Heiser and one by the government. Meredith Sayer and then Todd Thompson, who was the witness that was hiring partners for a few law firms in the Guam. And they obviously said that that's not going to be a positive factor in determining whether they're going to hire someone if they've been terminated and if they're suing their employer to get their job back. However, a review of the record also shows that they said more than that, that they also indicated that, and I believe I have passed the play pages, the relevant pages of the transcript in my excerpts of the record, that Meredith Sayer said that in spite of these negative factors, the firm may still have hired them. She said that. And she also said, and I quote from her testimony, I guess you figure everybody sometimes just simply doesn't work out. They leave jobs because they didn't work out. And it's not necessarily a reflection on the employer or employee. It's how I personally look at it. And she also said, you know, I'm just not willing to say that I would not hire or have not hired somebody who's been terminated from another position. And even Todd Thompson said that they'd still be willing to speak with the app. They're not going to just outright rule someone out. Obviously this can be a negative factor. But if all that an ex-employee has to say is, well, if I go apply for jobs, I would have to tell the employer, prospective employer, that I was fired and that I'm suing my employer. Therefore, obviously, nobody is going to hire me. Therefore, I don't have to apply for any jobs. So that would set up a rule. It would depend on if we treat this as a priming attack. It would depend on what evidence the employee put in, what evidence the employer put in. It might be different in Hawaii than it is in Guam. It might be different depending on what type of job. If you're looking for a job as a mechanic, you might not be a great problem being hired even though you were fired as a government mechanic. If you're looking for a job with a law firm, it might be, depending on the evidence that you put on, that somebody could show that law firms are not likely to hire somebody who's looking to leave as quickly as he can. If that's a factual question. Well, yes, and that's interesting that Your Honor points that out because that's something that I haven't been able to sort out in my mind because we're talking about clearly erroneous standard for findings of fact. The clearly erroneous standard obviously applies only to findings of fact, not to conclusions of law. And whether someone made a reasonable effort to mitigate his or her damages seems to me, I'm perplexed, seems to me that's a conclusion, not a finding of fact. But I think that the Supreme Court... Well, it has to be a factual finding in a certain sense because we've instructed that how the burdens of proof are to be allocated. So you may quarrel with that, but it seems to me... Well, it could be mixed fact and conclusions. But the case law that I looked at does say that it's subject to clearly erroneous. That's what the Supreme Court said. I'm just very puzzled by that because it doesn't seem to be a clear finding of fact. Well, the Supreme Court did say that, and maybe they didn't say what they really would have meant when they thought it through. But they did say it. And also I think it's a bit telling that there's a lot of... If you look at the decisions, the three decisions and orders of the Superior Court in this case and the two opinions of the Supreme Court, they use the terms interchangeably, findings, conclusions, when they're talking about mitigation of damages. Sometimes they call them conclusions. Sometimes they call them findings. And so there's just kind of this interchange of using the terms interchangeably. It's a little bit loose, but I think there is some confusion. This is a segue to a question I wanted to ask, and that is it appears in the, going back to the 1999 decision of the Baltimore Supreme Court, they recite the proper standard on the burden of proof on those issues, saying that the employer, to meet the burden, to show that an employee failed to mediate damages, has to show that there were three requirements. Substantially equivalent jobs available, the employee couldn't obtain an equivalent job, and the employee failed to use reasonable diligence. Then they go on to say, a few pages later, we believe the appropriate rule of the current issue would be to examine whether the government has found that the burden of showing availability of jobs or that he failed to make reasonable efforts to employ them. In other words, they omitted one of the requirements. Well, Your Honor, my understanding of that is that we're looking at the alternative burden. The first burden were, as Your Honor just stated, there were three elements to that. Number one, that there's substantially equivalent jobs available during the time in question. Two, that the employee could obtain an equivalent job. And three, that the employee failed to use reasonable diligence in seeking one. The other, the alternative burden, is that the employer does not have to establish that substantially equivalent jobs are available if the employer can establish that the employee had taken himself out of the job market. In other words, did not make a reasonable effort to seek such employment. I think that's what they're saying. Is there really a difference in that issue? If you don't make a reasonable effort, if you know there are no jobs available, then it might not be a reasonable effort. Let's assume the private bar passed a resolution that we are not going to hire anyone fired by the government. Then you wouldn't have to file applications for that. Well, that's certainly a good argument. I'm just saying when you say you make a reasonable effort, it doesn't say you have to make an effort. It says you have to make an effort if it would be reasonable. But I think that the alternative standard, though, is that, a word of a different way in the cases, is that if the employer establishes that the employee had taken himself out of the job market, meaning I'm not going to apply, that then you don't even look at whether the jobs are available. That's my understanding of that alternative standard. Well, couldn't that be a reasonable effort if you applied to the— let's assume, to the contrary of what Christian suggested, just for argument, let's assume that the only place where you might really realistically expect to get a job is the government because they don't expect people to stay there forever. Let's assume that the judge said, Well, it's reasonable to— the places where you're really going to find vacancies are the government. You've really got to make a real effort with government jobs. And if you do that, I conclude that that's a reasonable effort because I know from the evidence it's unlikely you get a private job. Wouldn't that be a reasonable effort, then, just to go to government jobs? Well, I don't think in this case it would be because— No, no, not in this case. That's another one of those hypotheticals. Well, that's possible. But, again, I think that—I interpret that alternative burden. You don't look at whether there was a reasonable effort. You don't look—that's the first set of standards. The alternative burden, my understanding is, you don't look at whether a reasonable effort was made. You look at whether the employee took himself out of the job market,  Well, the quote is— That per se. failed to make reasonable efforts to find employment. That's the alternative. Correct. But I would think that if you look at the cases that are cited that support this alternative burden, that that's, in effect, what they say is that where the employee more or less takes himself out of the job market, which is, per se, not making a reasonable effort. But I—obviously, in this case, I think that just look at the reasonable effort. If you look at the evidence as a whole, he applied, and this is what the Supreme Court pointed out, is that what effort did Mr. Heiser make? He applied for seven jobs in six years. A little more than a job, one application a year in the public sector. He didn't apply for any jobs in the private sector. Why? And I point this out in a brief, is that in his testimony, he said he didn't want to work in the private sector. Not that there weren't jobs available, although he did say that, too. He didn't want a job in the private sector. He didn't want to go into sole practice. He stated that. He admitted that. So why would he apply for a job in the private sector when he didn't want to work in the private sector? He said all he wanted to do was to be a government lawyer. He didn't apply for federal jobs. He didn't take similar type of work, which the Superior Court stated in its 1997 decision in order that he had an obligation to look for similarly related type of work, for example, contract work with law firms, law clerk type of work. He didn't do that. And even the jobs that he applied for, even the work that he did, the court appointments, he extremely limited himself to misdemeanors. He did a couple of felonies. And he didn't handle any juvenile work. He said that the reason he didn't handle juvenile work was because if he was rehired by the Department of Law, that there would be a conflict of interest. Well, that's not really true, because in government practice, an attorney general's office, you can create walls. We do that all the time, create conflict walls if there is a conflict. He said that he was not experienced in doing felonies. He had been an attorney for more than ten years. And also he had the court appointment work itself. He worked for only three out of the six years. By the way, my understanding is the reason that the Supreme Court, I'm sorry, the Superior Court had doubled the amount and subtracted that from the wages. So it is because Mr. Heiser had done court appointments for only three out of the six years. I could be wrong, but I think that's why it was doubled. But you look at the amounts, averaging $4,200 a year over a period of three years. Mr. Heiser's own witness, Kurt Vanderveld, testified that in 1992, 1993, and 1994, three of the years that Mr. Heiser was unemployed, that he averaged more than $20,000 a year in court appointment work and that he probably made $30,000 to $40,000 in the first year. And so if you look at the whole record as a whole, which the Supreme Court did, and I'm sorry to disagree with Mr. Heiser, I do not think that the Supreme Court said it didn't look at the record. It didn't review the evidence. I think at one point it said it didn't review the entire record. But I think that they did review the evidence, and they did review enough of the evidence to establish to them that the Superior Court had made a clear error in its finding or conclusion that Mr. Heiser had made a reasonable effort to mitigate his damages. And you look at the two sets of facts. Mr. Thompson pointed out in his brief that, well, if there are two sets of facts that are available, and the Superior Court takes one, the Appellate Court shouldn't substitute its decision by adopting the other set of facts. Well, that's not what really happened. That's not really what happened here, because in that principle they have to be relatively oblivious of sets of evidence. You can't have something that's extremely weak, which I think the evidence that the Superior Court used to support its finding and mitigation was. But it has to be a stinking fish. Well, it's not necessarily in balance. Even a tilt. I do think it's a stinking fish, a 30-pound stinking fish. I mean, the evidence was so weak in support of that finding or conclusion. It's unbelievable. I mean, two attorneys saying that they probably wouldn't hire him. Mr. Heiser's own statement that he didn't apply because he didn't think he would be hired. Well, that's self-serving. And also that sets up a bad precedent, because now we're talking about failure to mitigate is going to be difficult to prove in the face of a subjective intent or subjective belief of an attorney. Since it's your verdict, why is it bad enough under the Superior Court? I mean, I understand your quarrel with the evidence and why, you know, those of us here might agree with you, but in terms of deferential review, if we're looking at a clear error and it's your burden to show lack of mitigation, where does that leave you? I mean, if there's some estimate that supports the finding, even though it's weak. Well, I think that the evidence that supports the finding has to be substantial evidence. And this is clearly not substantial evidence. Nowhere near substantial evidence. So we're going from dead fish to substantial evidence in terms of that clear error? Well, I think the standard is in, and I quote from one of the cases cited by Mr. Heiser, this is the Anderson versus City of Bessemer City, and I quote, a finding is clearly erroneous when although there is evidence to support it, weak evidence in this case, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. That's a more traditional view of the state of the case. Right. That's probably true. And that's exactly what the Supreme Court did in this case. It looked at, and it says right here that the reviewing court on the entire evidence, in other words, it looks at the evidence that was presented and looking at that evidence, it determines whether they had a definite and firm conviction that a mistake had been committed. Now, obviously, they did. And so I think they have met that standard, that clearly erroneous standard, using this terminology. But isn't the question now whether we wind up having the same definite and firm conviction? Because our task now is to decide for ourselves if the Superior Court was clearly erroneous in its finding. Right. And so I suppose if that's what this court would be doing, then it would have to also look at the evidence to see if it supports, if there's substantial evidence to support the finding of the Superior Court. And I think there's a difference between substantial evidence and a firm and definite conviction. Well, I don't want to quarrel with you, and I don't want to split hairs on that, but it seems like we're slipping a little bit on the same. I think there are different principles at issue here. One principle, which the Supreme Court stated in its 1999 opinion, was that if the trial court's account of the evidence is plausible in light of the record viewed in its entirety, the appellate court cannot reverse, even though convinced that it had been sitting as a prior fact, it would have weighed the evidence differently. So that's one standard, whether the trial court's account of the evidence is plausible in light of the record viewed in its entirety. And right there, I think that the Supreme Court, even though it didn't use these words, determined that the record viewed in its entirety, that the findings were not plausible. And then the next standard is an appellate court must accept the lower court's findings of fact unless upon review the appellate court is left with a definite and firm conviction that a mistake has been committed. So I think those are two standards. Well, I made this argument in the brief. Actually, this was one of the first things I was going to argue, is whether the Heiser 1 decision is even properly before this point. Yeah, I think that argument is fully made in the brief. We'll consider that. I'm over time now. Okay. Thank you very much. Thank you. At paragraph 22 of the Supreme Court's 1999 opinion, they state, we have not conducted a review of the evidence as presented to the trial court, but rather the Supreme Court simply looked at the conclusions reached by the trial court. Well, no, we've examined the basis of the conclusions regarding the efforts of the House to mitigate these damages. And we find that, I mean, I assume they mean by the basis that they've assumed they've reviewed the facts on which the Supreme Court based its conclusions. And then they go on to say, and we find these conclusions were not plausible in light of the entire record, suggesting that they have reviewed the entire record. So it's not entirely clear, but I think it's not accurate to say they didn't review the evidence that relates to the conclusions. I'd like to emphasize that the testimony on – well, first, that I think that what the pivotal factual finding in this case was, the trial court's factual finding that it was highly unlikely that Mr. Heiser would have been hired by a private law firm. And that's what the Supreme Court focused on in its decision. It didn't agree with that finding, but I think that pretty clearly that that is a factual finding which is the, I suppose, the critical finding in this case. And to determine whether or not the trial court's decision was clearly erroneous, we must focus on the record. And the testimony in the record was from two hiring partners from two private law firms. And the testimony of Ms. Sayre is especially intriguing because on this appeal to the Guam Supreme Court, Ms. Sayre filed an amici brief on behalf of the Guam Employers Council and the Guam Hotel and Restaurant Association, urging the Guam Supreme Court to reverse the trial court's ruling. But even Ms. Sayre, who is very much a partisan in this matter, although it wasn't quite so apparent at trial, she said that even she would be very cautious in considering an application from someone like Mr. Heiser who had been fired from the government of Guam and was suing to get his job back. This was the testimony the court had to deal with. And as the court noted, it's not as if some other attorney from some other law firm came in and said, listen, if Mr. Heiser had applied to us, we would have hired him. There's no testimony at all like that in the record. All that the trial court had was a testimony of Mr. Thompson, the testimony of Ms. Sayre, along with the fact noted by the trial court in its decision that Mr. Heiser never received a job offer from those positions which he did apply, all of which the court said led it to believe that it was highly unlikely that Mr. Heiser would have gotten a job from the private sector even if he had applied. And again, we submit that based on the record before the trial court, that conclusion was not clearly wrong. Thank you. Thank you, counsel. Case to historically will be submitted. The final case of the morning is United States v. Rideau. Thank you.
judges: Reinhardt, Thomas, Clifton